Case No. 23-4311

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Case No.: 23-4311

ROWE PLASTIC SURGERY OF NEW JERSEY,
L.L.C & EAST COAST PLASTIC SURGERY,
P.C.

**COMPLAINT**
**JURY TRIAL DEMANDED**

Plaintiff,

- Against -

HORIZON BLUE CROSS BLUE SHIELD OF
MASSACHUSETTS,

Defendant(s).

Plaintiff(s), ROWE PLASTIC SURGERY OF NEW JERSEY, L.L.C & EAST COAST

PLASTIC SURGERY, P.C. (Collectively herein "the Plaintiffs" or "The Provider(s)"),

by and through their attorneys Lewin and Baglio, LLP, bring this complaint against

HORIZON BLUE CROSS BLUE SHIELD OF MASSACHUSETTS, (herein after

"BCBS") and allege as follows upon knowledge as to themselves and their own actions

and otherwise upon information and belief:

## THE PARTIES

1.      BCBS is a corporation, and at all times mentioned herein was, a

Massachusetts corporation, with its principal place of business in Boston, MA.

2.      BCBS is an insurer authorized to do business in New York State.

3.      BCBS violated New York law while doing business in New York State.

4.      BCBS does business within the EASTERN DISTRICT OF NEW YORK.

5.     ROWE PLASTIC SURGERY OF NEW JERSEY, L.L.C. (herein after "RPSNJ") is a L.L.C. existing and operating under the laws of the State of New Jersey, with its principal place of business, mailing address and registered agent in Montclair, NJ 07042-2212.

6.     Non-party Lisa Schneider, M.D. is affiliated with RPSNJ; RPSNJ is an entity through which non-party Lisa Schneider, M.D. does business.

7.     Non-party Lisa Schneider, M.D. rendered medical services to non-party WR[1] for which RPSNJ sought payment from BCBS.

8.     EAST COAST PLASTIC SURGERY, P.C. (herein after "ECPS") is a P.C., existing and operating under the laws of the State of New Jersey, with its principal place of business, mailing address and registered agent in Red Bank, NJ 07701-2178.

9.     Non-party Charles Pierce, M.D. is affiliated with ECPS; ECPS is an entity through which non-party Charles Pierce, M.D. does business.

10.     Non-party Charles Pierce, M.D. rendered medical services to non-party WR for which RPSNJ sought payment from BCBS.

## JURISDICTION AND VENUE

11.     This Court has Subject Matter Jurisdiction pursuant to Title 28, Section 1332 of the United States Code (28 U.S.C. § 1332(a)), Diversity Jurisdiction; the

---

[1] WR are the initials of a consumer of BCBS's health insurance products.

parties are residents of different states and the amount in dispute is in excess of Seventy Five Thousand Dollars ($ 75,000.00).

# FACTUAL ALLEGATIONS

**A.      Background**

12.      RPSNJ and ECPS are plastic surgery practices. Non-party Lisa Schneider, M.D. and non-party Charles Pierce, M.D. were educated and trained at top surgical institutions. RPSNJ and ECPS provide expertise in microsurgery. Non-Party Lisa Schneider, M.D. and non-party Charles Pierce, M.D.are trained on and implement the latest and most innovative techniques to reduce scarring and trauma from surgery. RPSNJ and ECPS are widely regarded for their short-scar nipple saving breast reduction technique.

13.      WR needed reduction mammaplasty.

14.      Non-party Lisa Schneider, M.D. determined WR was a candidate for reduction mammaplasty.

15.      At all relevant times, WR and BCBS shared the costs of medical services rendered by out-of-network provider(s) [2].

---

[2] See *Surprise Billing in Private Health Insurance: Overview of Federal Consumer Protections and payment for Out-of-Network Services* R46856 July 26, 2021, Rosso Shen & Isserman Congressional Research Digital Collection

16. Non-party Lisa Schneider, M.D., non-party Charles Pierce, M.D., RPSNJ and ECPS are not part of any "provider network" organized by BCBS; BCBS treats them as non-participating provider(s), commonly known as out-of-network provider(s).

17. Because there are no contracts between out-of-network providers and BCBS, BCBS determines the total amount of payment it will make to an out-of-network provider(s), and it is only after determining the proper amount BCBS owes can WR's share of the costs be calculated.

**B. Non-party Lisa Schneider, M.D. And Non-Party Charles Pierce, M.D. And BCBS Enter Into An Ad-Hoc Agreement To Render Services To WR**

*1. BCBS Offered A Unilateral Contract*

18. On or about 8/20/2021, an RPSNJ and ECPS employee contacted BCBS using the phone number provided by BCBS for obtaining insurance payment and coverage information and spoke to a/an BCBS employee.

19. The BCBS employee answered the phone number provided by BCBS for the purpose of obtaining insurance payment and coverage information. The BCBS employee who answered the phone number provided by BCBS was able to access BCBS' records for BCBS to provide information concerning WR's coverage, WR's deductible limits and out-of-pocket limits and whether or not those limits had met.

20. Based upon that conversation and prior dealings with BCBS, it was apparent to RPSNJ and ECPS that BCBS's employee who served in this capacity had the authority to bind BCBS.

DocuSign Envelope ID: 716CA241-9938-41BF-AF41-1355CE120CA0

21.     During phone conversations between RPSNJ and ECPS' employees and BCBS' employees concerning services to be rendered to WR, BCBS' employee represented that it would reimburse the services rendered to WR based upon 80% reasonable and customary.

22.     80% reasonable and customary is an industry pricing term that means BCBS would pay an amount equal to 80% reasonable and customary of the UCR.

23.     By representing that it would reimburse medical services at 80% reasonable and customary, BCBS made a unilateral offer to reimburse services rendered by non-party Lisa Schneider, M.D. and non-party Charles Pierce, M.D. using 80% reasonable and customary to determine the amount of reimbursement, if any.

   a.  *BCBS Offered A Price Expressed In Terms Of Commercial Practice And Trade Usage, An Acceptable Means Of Identifying A Price In New York*[3]

24.     Typically, health insurers, like BCBS, determine the amount it pays to out-of-network providers using either of two methods: a UCR method or a Reference Based method.

25.     The UCR method is when the insurer uses a percentile threshold of the costs for a service rendered by similar providers in the same geographic area or marketplace to price a claim for medical services.

---

[3] *Cobble Hill v. Henry & Warren*, 74 N.Y.2d 475 (1989)

26. The Reference Based method is when the insurer utilizes the Centers for Medicare and Medicaid ("CMS") pricing or other benchmark pricing methodologies to price a claim for medical services.

27. At all times, BCBS determines the data and method used to determine the amount it pays.

28. An insurer will typically disclose the allowed amount for a service rendered by an out-of-network provider as a percentage of UCR or a multiple of CMS; this is typically called the out-of-network rate or the OON rate.

29. New York Insurance Law §§ 3217-a(a)(19)(B) requires insurers to disclose the amounts paid for out-of-network services as a percentage of UCR. New York Insurance Law §3217-a(f) states that the 80th percentile of providers' charge for a service in a geographic area is the usual and customary cost for that service.

30. The 75th-80th percentile range of UCR is a percentile threshold recognized in the healthcare industry as a reasonable value for a medical service.

31. FAIRHealth data is a benchmarking database maintained by a nonprofit organization that is recognized by New York State Department of Financial Services and in the healthcare industry as a reliable source for provider pricing and for determining UCR.

## 2. *RPSNJ And ECPS Accepted BCBS'S Offer Of A Unilateral Contract By Performance*

32. On 12/29/2022, RPSNJ and ECPS accepted BCBS' offer by rendering bilateral breast reduction to WR.

33.     After rendering bilateral breast reduction, RPSNJ and ECPS submitted its billing to BCBS.

   a. *Explanation Of Billing*

34.     RPSNJ and ECPS billed BCBS a total of $ 300,000.00 for the services rendered on 12/29/2022 indicating the services it rendered using industry standard billing codes, known as "CPT codes." RPSNJ and ECPS also substantiated the use of those CPT codes by including the relevant medical documentation with its billing.

35.     It is industry standard practice for BCBS to rely upon the billing codes submitted by a medical provider to determine the amount BCBS would pay.

36.     RPSNJ billed BCBS $ 150,000.00 for the services Lisa Schneider, M.D. rendered and ECPS billed BCBS $ 150,000.00 for the services Charles Pierce, M.D. rendered.

### 3. *BCBS Breaches The Agreement By Failing To Pay The Offered Price*

37.     BCBS accepted RPSNJ and ECPS' performance.

38.     Upon receipt of the billing, BCBS partially performed its obligation by adjudicating the claims, determining that RPSNJ and ECPS had a right to payment and then issued payment in the amount of $2,143.34 to RPSNJ for the services Lisa Schneider, M.D. rendered and $342.94 to ECPS for the services Charles Pierce, M.D. rendered.

39.     BCBS partially performed its part of the agreement because it did not issue payment in an amount equal to 80% reasonable and customary.

40.     BCBS did not deny RPSNJ and ECPS's claim.

41. BCBS intentionally issued a payment that was less than what was offered and was late and unreasonable.

**C.    BCBS' Automated Claims Processing Results In Underpaid Claims**

42. Upon information and belief, BCBS has, as is common in the health insurance industry, largely automated its claims adjudication process.

43. Upon information and belief, BCBS has designed and implemented its automated claims adjudication process to ensure that claims for payment received by BCBS for all services rendered by any out-of-network providers are intentionally underpaid.

44. Upon information and belief, BCBS intentionally underpays out-of-network services to artificially reduce gross costs for medical services and increase its profits.

45. Every dollar that BCBS was obligated to pay that it didn't pay was a dollar counted directly as profits.

46. While underpayment serves as a windfall for BCBS, being misled into providing medical services leaves the medical provider with a broken promise and the legal bills associated with attempting to be made whole again.

47. Upon information and belief, when BCBS processes the claims it receives, it relies on the information reflected in the claim itself, and particularly the CPT code, to determine the date of service, the service provided to the consumer, and the medical provider's network status, i.e., participating provider or non-participating provider.

48.     Upon information and belief, CPT codes are among the most important pieces of information included in a claim to BCBS, and a primary determinant of the amount BCBS will ultimately pay.

49.     Upon information and belief, the type and degree of care indicated by the CPT code(s) included in a claim is a primary determinant of what BCBS will pay on the claim.

50.     Upon information and belief, BCBS intentionally issues improper and reduced payment for services rendered by out-of-network providers.

51.     The automated process means that BCBS routinely applies limitations on reimbursement improperly. The improper application of limitations on reimbursement improperly reduces the amount of BCBS' payment.

52.     The delta between what BCBS paid on the claim identified in the Complaint and what BCBS should have paid is so substantial, it forecloses the possibility that BCBS merely made a mistake.

## D.     BCBS'S Payment Was Unreasonable And Caused RPSNJ And ECPS To Suffer Damages

53.     By paying $ 2,486.28 to RPSNJ and ECPS, BCBS breached the contract.

54.     $ 2,486.28 is not the amount agreed to and is not a reasonable value for bilateral breast reduction because it is not within the 75th-80th percentiles of UCR for bilateral breast reduction; as a result RPSNJ and ECPS suffered damages.

55.     BCBS did not use 80% reasonable and customary to calculate the payment for bilateral breast reduction, therefore, BCBS incorrectly calculated its payment to RPSNJ and ECPS; as a result RPSNJ and ECPS suffered damages.

DocuSign Envelope ID: 716CA241-9938-41BF-AF41-1355CE120CA0

56.  Alternatively, BCBS intentionally and incorrectly calculated 80% reasonable and customary, resulting in an underpayment to RPSNJ and ECPS; as a result RPSNJ and ECPS suffered damages.

56.     BCBS did not properly apply industry coding standards for determining limitations on reimbursement for the services rendered, therefore, BCBS incorrectly calculated its payment to RPSNJ and ECPS, as a result RPSNJ and ECPS suffered damages.

## COUNT I-BREACH OF CONTRACT

57.     RPSNJ and ECPS repeat(s) and re-allege(s) the foregoing paragraphs as if fully set forth herein.

58.     RPSNJ and ECPS and BCBS entered into a contract for non-party Lisa Schneider, M.D. and non-party Charles Pierce, M.D. to render medical services to WR.

59.     Non-party Lisa Schneider, M.D. and non-party Charles Pierce, M.D. provided all the medical services contracted for, but BCBS has failed and refused to pay RPSNJ and ECPS for those services as agreed between the parties.

60.     As a result of BCBS actions, RPSNJ and ECPS have suffered damages in an amount to be determined by the trier of fact.

# COUNT TWO-Unjust Enrichment

61.     RPSNJ and ECPS repeat(s) and re-allege(s) the foregoing paragraphs as if fully set forth herein.

62.     BCBS' failure to pay amounts due enriched them.

63.     BCBS' retention of the unpaid amount for the medical service provided, is improper, and it is against equity and good conscience to allow BCBS to keep the monies.

64.     RPSNJ and ECPS conferred a benefit upon BCBS under circumstances where BCBS knew or should have known that RPSNJ and ECPS expected to be compensated for the benefit, according to usual and customary prevailing rates for those services.

65.     The benefit conferred upon BCBS was the benefit of its bargain, bilateral breast reduction and other medical services rendered to WR.

66.     BCBS knew or should have known that RPSNJ and ECPS expected to be reimbursed 80% reasonable and customary for the services rendered to WR because BCBS had reimbursed RPSNJ and ECPS for the same service rendered to non-party beneficiaries at a rate substantially greater than the reimbursement issued to RPSNJ and ECPS.

67.     As a result of the WR's actions, RPSNJ and ECPS suffered damages in an amount to be determined by the trier of fact.

# COUNT THREE- PROMISSORY ESTOPPEL

68.    RPSNJ and ECPS repeat and re-allege the foregoing paragraphs as if fully set forth herein.

69.    BCBS made a clear and definite promise to reimburse the medical services provided by RPSNJ and ECPS to WR at 80% reasonable and customary and should have expected that ROWE PLASTIC SURGERY OF NEW JERSEY, L.L.C & EAST COAST PLASTIC SURGERY, P.C. would rely upon that promise.

70.    BCBS should have expected RPSNJ and ECPS to rely upon its promise because, among other reasons, BCBS knew or should have known that that RPSNJ and ECPS were going to provide all the medically reasonable and necessary to perform bilateral breast reduction.

71.    BCBS should have expected ROWE PLASTIC SURGERY OF NEW JERSEY, L.L.C & EAST COAST PLASTIC SURGERY, P.C. to rely upon its promise because, among other reasons, BCBS knew or should have known that it had issued payment to RPSNJ and ECPS under the same or similar circumstances for the same or similar services that were rendered to WR.

72.    But for BCBS' agreement to reimburse the service at 80% reasonable and customary, RPSNJ and ECPS would not have otherwise provided the surgery and the related medical services to WR.

73.    Relying on BCBS' offer of reimbursement at 80% reasonable and customary, RPSNJ and ECPS forbore from collecting payment in full  from WR prior to rendering reduction mammaplasty.

74. The Providers relied on BCBS' promise to their detriment.

75. As a result of BCBS' actions, The Providers have suffered substantial damages in an amount to be determined by the finder of fact.

## COUNT FOUR- FRAUDULENT INDUCEMENT

76. RPSNJ and ECPS repeat and re-allege the foregoing paragraphs as if fully set forth herein.

77. With the intent to induce RPSNJ and ECPS to enter into an ad-hoc agreement, BCBS intentionally represented to RPSNJ and ECPS that it would issue reimbursement based on 80% reasonable and customary for medical services rendered to its consumer.

78. When BCBS intentionally told RPSNJ and ECPS that it was reimbursing bilateral breast reduction using "80% reasonable and customary", BCBS knew its claims processing system had no capacity to ensure the claims were paid using 80% reasonable and customary.

79. RPSNJ and ECPS justifiably relied on BCBS' statements that it would reimburse their services using 80% reasonable and customary, and as a result rendered bilateral breast reduction to WR.

80. As a result of BCBS' willful and wanton conduct, RPSNJ and ECPS have been damaged.

DocuSign Envelope ID: 716CA241-9938-41BF-AF41-1355CE120CA0

81.     Based on BCBS' willful and wanton conduct, BCBS should be punished to prevent BCBS from continuing this fraudulent practice.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, ROWE PLASTIC SURGERY OF NEW JERSEY, L.L.C & EAST COAST PLASTIC SURGERY, P.C. demand and respectfully prays this Court:

1.     Award Plaintiffs a judgment against Defendant in an amount to be determined at Trial, to compensate Plaintiffs for all harm suffered, including but not limited to compensatory damages in the amount of  $97,563.72, an award of punitive damages in an amount equal to treble the consequential damages, pre-judgment amount awarded together with granting interest, statutory interest, costs and expenses as well as all other damages provided by applicable law.

2.     Grant Plaintiffs such other and further relief as the Court may deem just and proper**.**

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiffs demand a trial by jury in this action

of all issues to triable.

**LEWIN & BAGLIO, LLP**
By: Michael Baglio, Esq.
Attorneys for the Plaintiff
1100 Shames Drive, Suite 100
Westbury, New York 11590
Tel: (516) 307- 1777
Fax: (516) 307- 1770
L&B File No.: 2202.COM.21